CRUIS ALONG BOATS, INC., Plaintiff, v. STANDARD STEEL PRODUCTS MANUFACTURING COMPANY, Respondent: KENOSHA AUTO TRANSPORT CORPORATION, Cross Defendant-Appellant.

*January 8—February 4, 1964.*

For the appellant there was a brief by *Kivett & Kasdorf,* attorneys, and *Nonald J. Lewis* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis.*

For the respondent there was a brief by *Robertson, Hoebreckx & Davis,* attorneys, and *Walter S. Davis* of counsel, all of Milwaukee, and oral argument by *Walter S. Davis.*

CURRIE, C. J. The issue on this appeal is whether the trial court abused its discretion in refusing to vacate the default judgment rendered upon the cross complaint of defendant Standard Steel Products against impleaded defendant Kenosha Auto Transport.

The contention of appellant Kenosha Auto Transport is that it has established a clear case of "excusable neglect" within the meaning of sec. 269.46 (1), Stats.,[1] which required the trial court to vacate the default judgment. It advances these reasons in support of this contention: (1) The attorney in charge of the case was prevented by the press of trial work from getting the answer and counterclaim served within the twenty-day allotted period; (2) the attorney had the right to assume that the principal action between plaintiff Cruis Along and defendant Standard Steel Products would not be reached for trial for some time so that it was of no vital importance to anyone concerned that the answer to the cross complaint be served expeditiously;

---

[1] This statute provides: "(1) The court may, upon notice and just terms, at any time within one year after notice thereof, relieve a party from a judgment, order, stipulation or other proceeding against him obtained, through his mistake, inadvertence, surprise or excusable neglect and may supply an omission in any proceeding."

(3) the answer to the cross complaint and counterclaim was in the hands of opposing counsel only eight days late, and proceedings to vacate the default judgment were instituted only eleven days after it was entered; and (4) without a vacation of the default judgment there will be a miscarriage of justice inasmuch as Standard Steel Products has been awarded $4,000 in damages when its actual damages are but $395.

This court has repeatedly held that the press of other trials and business is not such "excusable neglect" as to make it an abuse of discretion not to grant relief under such statutes as secs. 269.46 (1) and 269.45 (2). *Millis v. Raye* (1962), 16 Wis. (2d) 79, 113 N. W. (2d) 820; *Jolitz v. Graff* (1960), 12 Wis. (2d) 52, 106 N. W. (2d) 340; *Millar v. Madison* (1943), 242 Wis. 617, 9 N. W. (2d) 90. As the trial judge rightly pointed out in his first memorandum decision:

"It is very significant that while counsel for the impleaded defendant states he was engaged in another trial and that these other occupations formed a basis for finding excusable neglect, the record is absolutely barren of any statement by him that he was (a) Unable to phone counsel for the defendant, Standard Steel Products Manufacturing Company, (b) Unable to file and Serve a notice of appearance, (c) Move for an extension of time to file an answer because of the press of other trials, (d) Unable to stop in court, which is the same building where he claims the trials were proceeding, and notify the court of this fact, (e) Unable to have anyone of his associates do any of these things."

Appellant cites *McArthur v. Slauson* (1884), 60 Wis. 293, 19 N. W. 45, as negating the above observation of the trial judge that no showing was made why one of the other associates in the law firm of the lawyer, who was in charge of this matter for Kenosha Auto Transport, could not have been asked to take one of the enumerated steps to

avoid a default. The *McArthur Case* held that even though a lawyer may have competent partners a client who has entrusted a case to a particular lawyer may be entitled to have him try the case. Here, however, we are not concerned with a trial, but with the routine matter of serving and filing a timely notice of appearance or securing an extension of time within which to answer.

We conclude that, whether or not the appellant's attorney had the right to assume that the principal action would not be reached for trial in the near future, is wholly immaterial on the issue as to the trial court's abuse of discretion. Under the law, counsel knew that appellant had twenty days from March 27, 1962, in which to answer the cross complaint. It was not for counsel to determine for himself whether any harm would result if he was late in drafting, serving, and filing his client's answer to the cross complaint.

The most-potent argument advanced by appellant is that the attempted service of answer was made only eight days late, and that only eleven days elapsed from the date of entry of the default judgment until an application was made to vacate the judgment. Prompt action by a defaulting party to remedy the situation caused by his neglect is a material factor to be considered when determining whether such neglect is "excusable." *Millis v. Raye, supra,* at page 84; *Valentine v. Patrick Warren Construction Co.* (1953), 263 Wis. 143, 170, 56 N. W. (2d) 860; *Johnson v. Eldred* (1861), 13 Wis. 539 (*482), 541 (*484). It is for this reason that we would have granted appellant's motion to vacate the judgment if we were sitting as a trial court in this case. Sec. 269.46 (1), Stats., however, confers wide discretion on the trial court. Therefore, we are not prepared to lay down a rule that, in every case of neglect followed by a prompt application for relief, it is an abuse of discretion not to grant the relief.

If highly excessive damages were awarded to Standard Steel Products by the default judgment, this is a proper element to be considered in exercising the discretion authorized by sec. 269.46 (1), Stats. Preventing a miscarriage of justice is one of the elements to be considered. It is undisputed that appellant's driver reported that one of the two boats being transported from Cruis Along's factory in Maryland to Texas was damaged as a result of the side of the boat being scraped against a bridge. At the time of taking testimony, the president of Standard Steel Products testified that there was a loss in market value as a result of the damage in transit of $4,000, which was approximately between 20 and 25 percent of its market value in Texas. He further testified:

"This is quite a luxurious boat and the buyer is concerned, I would say, to a great extent, with the prestige value of the boat. If we were to repair the boat it would then become a rebuilt boat and subsequently it would lose a great deal of its appeal to that type of buyer. This has been quite a problem. If it were a less costly boat it wouldn't be quite that important."

Appellant, on the other hand, established by affidavit that the cost of repairing the damage would have been but $395.

The situation presented here is different than where the owner of a damaged automobile or piece of machinery has bought the property for his own use, and not for resale. Here we have a luxury boat being taken into a special market for resale. Under such circumstances the proper measure of damages was that applied by the trial court, viz., the loss in market value. *W. A. Stackpole Motor Transportation v. Malden Spinning & Dyeing Co.* (1st Cir. 1958), 263 Fed. (2d) 47; *Zucchero v. Illinois Central R. Co.* (D. C. Mo. 1954), 121 Fed. Supp. 53, affirmed, 221 Fed. (2d) 934; *Reider v. Thompson* (5th Cir. 1952), 197

Fed. (2d) 158. See also McCormick, Damages (hornbook series), pp. 471, 472, sec. 124.

Appellant also advances the argument that a litigant should not be penalized for the mistake of his attorney and cites *Paschong v. Hollenbeck* (1961), 13 Wis. (2d) 415, 108 N. W. (2d) 668. That case holds that the mistake or negligence of an attorney is not necessarily imputable to his client so as to bar the client from claiming excusable neglect and being granted relief under sec. 269.46 (1), Stats. There the trial court refused to vacate a default order on the ground it had no power to do so where the mistake was one of law and not of fact. This court held this was not a valid ground for refusal to exercise discretion under sec. 269.46 (1), and reversed and remanded. On remand the trial court exercised its discretion and, in spite of the fact that the mistake was that of the lawyer, refused to vacate the order. Again the defeated movant appealed. The facts presented at the second hearing were the same as those presented on the first appeal, with one minor immaterial addition. On the second appeal this court affirmed, *Paschong v. Hollenbeck* (1962), 16 Wis. (2d) 284, 286, 114 N. W. (2d) 438, and stated, "A remand to the trial court to exercise discretion does not contain the thought that the discretion can properly be exercised in one manner only."

After a careful review of the record before us we are constrained to conclude that there was no abuse of discretion on the part of the trial court in denying the application to vacate the judgment.

In addition to deciding that appellant had not established that its default was due to execusable neglect, the trial court advanced as a further reason for denying the application the fact that there had not been compliance with the requirement that the movant establish by affidavit or verified answer that it has a meritorious defense. A reading of the

portion of the memorandum decision devoted to this point discloses that the trial judge was cognizant with the rule that an affidavit of meritorious defense is not required if the motion is supported by a verified answer. See *Town of Omro v. Ward* (1865), 19 Wis. 249 (*232). The instant affidavit of counsel was not a compliance with the rule because the averment of meritorious defense was made on information and belief. The trial court also held the proposed answer insufficient because the denials of liability and damages and the verification by attorney were both on information and belief. We agree.

In the absence of an answer properly verified by one having personal knowledge of the facts, appellant should have submitted an affidavit to the effect that the applicant has a meritorious defense. Such an affidavit should conform to the rules governing affidavits generally. *Butler v. Mitchell* (1863), 17 Wis. 54 (*52). It should be by the party or by one having personal knowledge of the requisite facts. Where the affidavit is the primary basis for the motion to vacate, affiant must aver that he has fully and fairly stated the case in the action to his attorney and that he is advised by said counsel, upon such statement thus made, that he has a valid and substantial defense to the action upon the merits and to the whole thereof. See 6 Callaghan's Wisconsin Pleading and Practice (3d ed.), pp. 27–29, sec. 40.20, and authorities cited therein. The affidavit of appellant's counsel in the instant case does not meet these requirements.

*By the Court.*—Order affirmed.